## Benjamin Mason *versus* Charles Mason.

A spendthrift under guardianship can maintain no action in his own name alone, for an assault and battery committed upon him by his guardian.

This was trespass for an assault and battery alleged to have been committed by the defendant upon the plaintiff, who was under the defendant's guardianship as a spendthrift.

ın the Court of Common Pleas, the defendant having pleaded in abatement to the action, that it was brought by the ward in his own name, the plea was adjudged to be bad. The defendant excepted.

*Battelle* and *Williams*, for the defendant, cited *St.* 1783, c. 38, § 7 ; 1 Chitty on Pl. 291, note ; 2 Saund. 212, note ; Bac. Abr. *Guardian*, *D* ; 2 Dane's Abr. 5, 7, 9, 12, 15, 16, 31 ; Anc. Charters, &c. 44 ; *Bond* v. *Bond*, 2 Pick. 385 ; *Russell* v *Coffin*, 8 Pick. 143 ; *Dunbar* v. *Mitchell*, 12 Mass. R. 373 ; *Norton* v. *Leonard*, 12 Pick. 152 ; *Manson* v. *Felton*, 13 Pick. 206 ; *Somes* v. *Skinner*, 16 Mass. R. 348.

*A. Cushman*, for the plaintiff, cited *Boyden* v. *Boyden*, 5 Mass. R. 427 ; *Smith* v. *Spooner*, 3 Pick. 229 ; *Norton* v. *Leonard*, 12 Pick. 152.

DEWEY J. delivered the opinion of the Court. The effect of an appointment of a guardian under the provisions of *St.* 1783, c. 38, § 7, upon the legal capacity of the spendthrift, has been heretofore somewhat considered by this Court, and some general principles established, having an important bearing upon the present case. I allude particularly to the case of *Mason* v. *Fuller*, 13 Pick. 206. The precise question there presented was, whether a person under guardianship as a spendthrift, was competent to make an acknowledgment of a debt contracted by him before he was under guardianship, so as to take the case out of the operation of the statute of limitations ; and it was held he could not. The Court considered the mischief intended to be guarded against by the statute, and the nature of the remedy provided ; and it was adjudged, that one thus placed under guardianship is not only deprived of all control over his estate, but is incapacitated to make any contract. It is his guardian who is to manage all the property, and to sue for and collect all debts. It is the guardian alone who can create new liabilities, and can enforce or discharge all demands of his ward. The legal incapacity of the ward to act in all cases of contract, is distinctly ruled. Being under this disability, is it not a proper inference that he is disqualified from instituting suits at law in his own name ? Would not such a power in the hands of the ward be liable to great abuses, and

*Mason*
*v.*
*Mason.*

*Oct. 25th.*

*April term*
*1838, at*
*Taunton.*

Mason
v.
Mason.

tend to defeat the design of the legislature in subjecting him to a guardianship ?

As a general principle, I suppose, his incapacity to institute suits at law, without the concurrence of his guardian, will be readily admitted. But it is said, that the present case forms an exception, and on two grounds :

1. The nature of the injury for which redress is sought ; and
2. The person of whom the damages are claimed.

On the first point, it is urged, that the subject of a personal injury to the plaintiff, is beyond the scope of the authority of this guardian, as he has not the care of the person of his ward. It is true, so far as relates to the disposal of the ward in service, or the general care of his person, the guardian had no authority to act, under the statutes in force when the present action was instituted. But if we consider the nature of the present controversy, it will be seen, that it is not how the person of the ward shall be employed, as whether he shall devote himself to agriculture or a mechanical employment, nor even whether he shall be active or idle, confined or at large. If it were either of these, he might with propriety urge the objection, that the powers of the guardian did not embrace these objects. But this is a mere claim for money, and as much a pecuniary demand as if it were an action of trespass against a wrongdoer for taking away his goods, or any other claim for unliquidated damages. For injuries to the person the law recognizes no mode of compensation but in money ; and a legal demand for damages in such a case, is like that for any other wrong, a mere right to recover so much money as will compensate for the injury sustained. And the question is, therefore, shall the spendthrift be allowed to control and squander, if he pleases, the pecuniary damages he may be entitled to recover for his personal injuries, while every dollar of his property and the entire income of it, are locked up as against him. Is there any such distinction as to his rights in reference to the source from which the money is received ?

If this cause of action had accrued with another person than the guardian, we think there would be no doubt that the action could be instituted only in the name of the ward by his guardian. It is very clear that the right of the plaintiff to prose-

cute this suit in the present form cannot be sustained upon the mere ground that the cause of action is for a personal injury to him. This brings us to the other point, whether the circumstance that the guardian is the person of whom damages are claimed, will authorize this action by the ward ?

It is difficult to perceive any distinction in principle, between the right of this plaintiff to prosecute a suit against his guardian for a trespass to his person, or for other causes of action. The provision in the Bill of Rights, *art.* 11, to which we were referred by the counsel for the plaintiff, declaring, that every subject of the Commonwealth ought to find a certain remedy by having recourse to the laws for all injuries he may receive in his person, property or character, would require the like remedy to be secured to him in either case.

If the statute we have been considering be in violation of the Declaration of Rights, it is equally so when applied to the restricting of the plaintiff in the privilege of prosecuting suits at law for injuries to his property, as to his person.

But we think, that there is no substantial defect in the legal remedy in the case of an injury committed by the guardian upon the person of the ward. The relation of guardian and ward, while it exists between them, only protects the guardian from civil actions by the ward. Redress through the criminal courts is always open to him. He may complain to the proper tribunal, and procure an indictment, if a sufficient cause exists. He may apply to a magistrate, and ask that sureties to keep the peace may be required of one from whom he may apprehend any serious personal injury. And as to his civil remedy for damages, it is only postponed until the relation subsisting between the parties as guardian and ward, can be dissolved. The use of unauthorized personal violence upon his ward, would always furnish a sufficient cause for the removal of the guardian from office ; and, when thus removed, the disability on the part of the ward to sue, would no longer exist. He would either possess it in his own right, or if placed under a new guardian, a suit would be prosecuted by his authority.

In some of these various modes adequate protection would be afforded against personal injuries from the guardian ; and the individual who may be placed under the temporary legal

43*

Mason
*v.*
Mason.

incapacity to institute suits, may yet be secured in his consti-tutional rights. But, while he remains under guardianship, we think that his right to sue the person constituted by law his guardian, is suspended. To hold that the spendthrift, whom the law has declared so grossly negligent of his pecuniary in-terests, as to justify taking from him all control or direction of his property, may, at his own caprice, institute suits at law against the person who is clothed with the authority of his legal protector, would seem to be entirely inconsistent with the na-ture of the relation subsisting between them, and with the general objects in view in the appointment of such guardians.

Whether an infant under guardianship might not, by a *pro-chein ami*, prosecute a suit against his guardian, we have not thought necessary to decide. Authorities may be found in the English books, supporting the doctrine, that such an action may be sustained in certain cases. However that may be, the Court are clearly of opinion, that the present action cannot be maintained.

*Exceptions sustained. Plea in abatement held good.*